Sherry HICKEY, Plaintiff and Appellee,

v.

## NORTH DAKOTA DEPARTMENT OF HEALTH AND CONSOLIDATED LABORATORIES, Defendant and Appellant,

and

## Park River Good Samaritan Center, Defendant.

Civ. No. 950100.

Supreme Court of North Dakota.

Aug. 29, 1995.

Neil W. Fleming (argued), of Fleming, Du-Bois & Trenbeath, Cavalier, for plaintiff and appellee.

Douglas A. Bahr (argued), Asst. Atty. Gen., Bismarck, for defendant and appellant.

LEVINE, Justice.

The North Dakota Department of Health and Consolidated Laboratories [the Department] appeals from a district court judgment reversing the Department's order that two findings of patient abuse by Sherry Hickey be documented on the nurse aide registry. We reverse the judgment and remand for entry of judgment affirming the Department's order.

In accordance with federal funding requirements for nursing homes, the Department maintains a registry of all persons who have completed training to work as a nurse aide. See 42 C.F.R. § 483.156 (1994); Ch. 33–07–06, N.D.A.C. Validated findings of abuse, neglect, or misappropriation of resident property by a nurse aide must be documented in the registry. 42 C.F.R. § 483.156(c)(iv) (1994); Section 33–07–06–07(3), N.D.A.C.

Sherry Hickey worked as a certified nurse aide at the Good Samaritan Center, a nursing home, in Park River. On December 18, 1991, Hickey and Janet Bina, another nurse aide, were bathing Melvin Beralrud. According to Bina, Hickey began "flirting" with Beralrud. Hickey placed Beralrud's paralyzed hand between her legs and began wiggling sideways, and back and forth, while saying, "Melvin likes me." Beralrud was visibly upset by the incident. Bina reported the incident to her supervisor that day, but apparently no action was taken at that time.

In October 1992, Hickey and Wendy Ness, another nurse aide, were caring for Ted Midboe. Hickey told Midboe she was going to "moon" him. She then turned around, bent over and dropped her pants and undergarments to her knees, exposing her buttocks to Midboe. Ness reported the incident a few weeks later.

In November 1992, after conducting an internal investigation, Good Samaritan Center terminated Hickey's employment and reported the incidents to the Department. The Department notified Hickey of the allegations and an on-site investigation was conducted in February 1993. The Department determined that the allegations were validated. However, due to a clerical error and

computer problems, Hickey's file was misplaced and she was not advised of the outcome of the investigation.

Finally, in February 1994, after her attorney sought assistance from the Governor's office, the Department advised Hickey that the investigation had validated the allegations of abuse. Hickey requested a hearing, which was held on May 13, 1994. Based upon the hearing officer's recommendations, the Department issued its order finding that Hickey had sexually abused Beralrud and Midboe and directing that the incidents be entered in the nurse aide registry.

Hickey appealed to the district court. The court determined that the lengthy delay by the Department violated Hickey's due process rights, and that the "mooning" incident did not constitute sexual abuse. It reversed the Department's order and directed that references to abuse by Hickey be deleted from the nurse aide registry. The Department has appealed.

When a decision of the Department is appealed to the district court and then to this court, we review the Department's decision and look at the record compiled before the Department. *Ollie v. North Dakota Department of Human Services,* 520 N.W.2d 233, 235 (N.D.1994); *Delorme v. North Dakota Department of Human Services,* 492 N.W.2d 585, 586 (N.D.1992). Under Sections 28–32–21 and 28–32–19, N.D.C.C., we affirm the Department's decision if its findings of fact are supported by a preponderance of the evidence, its conclusions of law are supported by its findings of fact, its decision is supported by its conclusions of law, and its decision is in accordance with the law. *Ollie, supra,* 520 N.W.2d at 235.

Hickey asserts that the lengthy delay between the incidents and the hearing violated her due process rights. We disagree.

Generally, to warrant dismissal of administrative proceedings for delay, a party must show not only unreasonable or unconscionable delay by the government in initiating, conducting, or concluding the proceedings, but also that the party's ability to defend against the allegations was substantially prejudiced by the delay. *See, e.g., Panhandle Cooperative Association v. Environmental Protection Agency,* 771 F.2d 1149, 1153 (8th Cir.1985); *Rhodes v. State Bar of California,* 49 Cal.3d 50, 775 P.2d 1035, 1041, 260 Cal.Rptr. 266 (1989); *In re Ettinger,* 128 Ill.2d 351, 131 Ill.Dec. 596, 603, 538 N.E.2d 1152, 1159 (1989); *In re Briggs,* 502 N.E.2d 879, 886 (Ind.), *cert. denied,* 484 U.S. 826, 108 S.Ct. 93, 98 L.Ed.2d 54 (1987); *In re Keithley,* 252 Kan. 1053, 850 P.2d 227, 233 (1993); *Board of Overseers of the Bar v. Dineen,* 557 A.2d 610, 613 (Me.1989); *Attorney Grievance Commission v. Owrutsky,* 322 Md. 334, 587 A.2d 511, 513–514 (1991); *In re N.P.,* 361 N.W.2d 386, 393 (Minn.1985); *Mississippi Bar v. An Attorney,* 636 So.2d 371, 375 (Miss. 1994); *DePaula v. Sobol,* 191 A.D.2d 822, 594 N.Y.S.2d 899, 901 (1993); *Ullo v. Commonwealth, State Board of Nurse Examiners,* 41 Pa.Commw. 204, 398 A.2d 764, 766 (1979); *State ex rel. Cline v. Maxwell,* 189 W.Va. 362, 432 S.E.2d 32, 38 (1993); *see also Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 547, 105 S.Ct. 1487, 1496, 84 L.Ed.2d 494, 507 (1985) (showing of a nine-month delay, without more, does not establish a due process violation).

As summarized in 4 Stein, Mitchell & Mezines, Administrative Law § 33.03[4] (1995) (footnotes omitted):

"Although there are not absolute guidelines, unreasonable agency delay that actually prejudices a party has prompted judicial relief. Thus, time lags alone are insufficient to invalidate agency action. It is only when agency inaction is coupled with a demonstrated harm that judicial intervention may be required. However, even when these conditions exist, judicial intervention is considered an extraordinary form of relief."

The primary purpose of professional disciplinary proceedings is to protect the public, and it would be inconsistent with the public interest to dismiss a disciplinary proceeding simply because of delays in initiating, conducting, or concluding the proceedings. *See, e.g., Owrutsky, supra,* 587 A.2d at 513; *In re N.P., supra,* 361 N.W.2d at 393; *In re Weinstein,* 254 Or. 392, 459 P.2d 548, 549 (1969), *cert. denied,* 398 U.S. 903, 90 S.Ct. 1689, 26 L.Ed.2d 61 (1970).

For purposes of this appeal, we will assume, without deciding, that the delay was unreasonable,[1] and will focus upon the prejudice element. Hickey claims that she was substantially prejudiced by the 29–month delay between the Beralrud incident in December 1991 and the hearing in May 1994, because Beralrud had died in the interim and was unavailable to testify.

■ The record demonstrates that Beralrud died in May 1992, only five months after the incident. The incident was not reported to the Department until November 1992, six months after Beralrud had died. Any delay attributable to the Department after November 1992 did not cause prejudice to Hickey because Beralrud had already died. Furthermore, even if the incident had been immediately reported in December 1991, it is highly unlikely that the investigation could have been conducted, Hickey notified, and a hearing scheduled within five months. We conclude that Hickey has failed to show that she was substantially prejudiced by any delay in these proceedings.

Hickey also asserts on appeal that, as a matter of law, the "mooning" incident did not constitute sexual abuse under Section 33–07–06–01(1), N.D.A.C. Hickey's theory at the administrative hearing was that the incidents never occurred. She did not assert that the alleged conduct was not abuse under the applicable regulation, and in fact she testified that, if the incidents occurred, they would constitute abuse.

■ Issues not raised before the agency will not be considered for the first time on appeal. *E.g., Wingerter v. North Dakota Department of Transportation,* 530 N.W.2d 362, 365 (N.D.1995); *True v. Heitkamp,* 470 N.W.2d 582, 592 (N.D.1991); *Choukalos v. North Dakota State Personnel Board,* 429 N.W.2d 441, 444 (N.D.1988). Hickey failed to properly preserve this issue for review on appeal.

We have considered the remaining issues raised by Hickey and find them to be without merit. We reverse the judgment and remand for entry of judgment affirming the Department's order.

VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.

---

1. We do not condone either the dilatory reporting by the Good Samaritan Center or the record-keeping errors by the Department. The latter's single miscue does not evidence the "deliberate institutional disregard" that requires a judicial response to protect systemic integrity. *See, e.g., Madison v. North Dakota Dept. of Transportation,* 503 N.W.2d 243, 246–47 (N.D.1993).